THOMAS M. HOIDAL, State Bar No. 007194
Law Office of Thomas M. Hoidal, P.L.C.
7227 North 16th Street, Suite 222
Phoenix, Arizona 85020-5257
thoidal@hoidallawoffice.com
Telephone:  (602) 254-0202
Facsimile:   (602) 254-0404

Attorney for Defendant Novartis Pharmaceuticals Corporation

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| Paul Schenk, *et al.*, | Case No. **CV-12-08223-PCT-NVW** |
|---|---|
| Plaintiffs, | **NOVARTIS PHARMACEUTICALS CORPORATION'S MOTION TO STRIKE EXPERT REPORT OF ROBERT MARX, D.D.S.** |
| v. | |
| Novartis Pharmaceuticals Corporation, | |
| Defendant. | |

As allowed by the Court's Order of February 11, 2014 [DE 38], Defendant Novartis Pharmaceuticals Corporation ("NPC") moves to strike the expert report of Dr. Robert Marx, D.D.S, submitted originally by plaintiffs on January 31, 2014 and then submitted in revised form on February 4, 2014.  As shown below, neither report complies with the requirements of Fed. R. Civ. P. 26(a)(2)(C) concerning the disclosure of expert opinions.

**FACTUAL STATEMENT**:

This is a products liability case in which plaintiffs allege that Paul Schenk's use of NPC's drugs Aredia® and Zometa®, prescribed to prevent the devastating fractures caused by osteogenesis imperfecta ("OI") or "brittle bone disease," resulted in osteonecrosis of the jaw ("ONJ").  Pursuant to Judge Holland's December 9, 2013 Scheduling and Planning Order, plaintiffs' expert disclosures were due January 31, 2014.  On that date, plaintiffs served expert disclosures for six non-retained experts

. . .

(Berger Decl., Exh. 1)[1] (naming Drs. Stephen F. Bansberg, Nanda Biswas, Craig Brady, Terrance Cavanaugh, Karel A. De Leeuw, and Michael D. Whitaker) and one retained case-specific expert (Berger Decl., Exh. 2), Dr. Marx.[2]  This motion to strike relates only to the expert disclosure concerning Dr. Marx which, as discussed below, was revised and resubmitted on February 4, 2014.

1. **Procedural History**.

This action was filed on September 4, 2007, in the United States District Court for the District of Columbia, transferred to the Middle District of Tennessee as part of the multi-district litigation *In re Aredia and Zometa Prods. Liab.*  3:06−MD−1760, remanded to the D.D.C. on September 25, 2012, and finally transferred to the District of Arizona pursuant to 28 U.S.C. Section 1404 by consent on October 22, 2012.  The consolidated federal litigation, a similar mass tort filed in New Jersey state courts, and additional federal Aredia®/Zometa® cases never consolidated in the MDL amount to more than 800 cases in which plaintiffs allege that Aredia® and/or Zometa® – drugs primarily indicated for the prevention of bone fractures in patients with cancer that has metastasized to the bone – have caused ONJ, that NPC did not adequately warn about the risk of ONJ, and that NPC's alleged failure to warn caused plaintiffs' injuries.

2. **Aredia®/Zometa®**.

These drugs were developed by NPC and approved by the United States Food and Drug Administration ("FDA") for the treatment of hypercalcemia of malignancy, of multiple myeloma (a bone cancer), and of others cancers that have metastasized to bone.  The active ingredient of both drugs is a bisphosphonate ("BP"), pamidronate in the case of Aredia® and zoledronic acid in the case of Zometa®.  In cancer patients, among other

---

[1]  Exhibits are to the Declaration of Bruce J. Berger in Support of Motion to Strike Expert Report of Dr. Robert Marx, Para. 3.

[2]  Plaintiffs later submitted an untimely report from another retained expert, Dr. Michael Mansfield, D.D.S. (Berger Decl., attached as exhibit 1 to Exh. 3), received on February 5, 2014.

1  beneficial effects, these two intravenous BPs substantially reduce the likelihood of
2  pathologic fracture and spinal cord compression, which can leave cancer patients in
3  wheelchairs for the balance of their lives.
4        Unfortunately for patients like Mr. Schenk who suffer from OI, there are no
5  FDA-approved drugs specifically indicated for treatment of that genetic condition.
6  However, BPs such as Aredia® and Zometa® have long been used off-label by
7  knowledgeable doctors. *See* OI Foundation Website,
8  http://www.oif.org/site/DocServer/_Bisphosphonates__Questions_and_Answers.pdf?do
9  cID=7241 (Berger Decl., Exh. 4). Because Aredia® and Zometa® strengthen bone, the
10 doctors who treated Mr. Schenk specifically believed it might be beneficial in reducing
11 the hundreds of pathologic fractures he had endured since childhood. *See*, *e.g.*
12 Deposition of Dr. Nanda Biswas, July 26, 2012, at 21-22 (Berger Decl., Exh. 5)
13 (Aredia® appears to be helping Mr. Schenk because he denies any new fractures on the
14 drug). Medical records demonstrate that Mr. Schenk himself, on numerous occasions,
15 requested the use of Aredia® and Zometa® and told his prescribing doctors that these
16 NPC medications had, in fact, greatly reduced the number of pathologic fractures he
17 endured and reduced as well the resulting, excruciating pain. *See* Deposition of Paul
18 Schenk, August 21, 2012, at 102-104 (Berger Decl., Exh. 6).
19       *Schenk* is the only one of the more than 800 Aredia®/Zometa® cases filed to date
20 in which NPC's drugs Aredia® and Zometa® were prescribed to treat OI, an extremely
21 rare disease. *See* Declaration of Bruce J. Berger, Para. 2.
22       **3.**  **Dr. Marx**.
23     Dr. Marx is one of plaintiffs' generic experts on general medical causation. He
24 has been named in every Aredia®/Zometa® case to testify that NPC's drugs can cause
25 ONJ. There is no testimony concerning Dr. Marx about OI – other than his noting in
26
27 . . .
28

-3-

1 passing that such a condition exists[3] – because no other Aredia®/Zometa® plaintiff has
2 OI as an underlying medical condition.

3   Dr. Marx, in addition to being plaintiffs' general causation expert, is also a
4 treating oral surgeon of a number of plaintiffs in the litigation and, as such, has
5 submitted expert reports on specific medical causation in such cases. *See*, *e.g.*, Expert
6 Report of Dr. Marx in *Avila v. Novartis Pharm. Corp.* (Aug. 8, 2011), pp. 4-6 (eight
7 paragraph case-specific portion of report including reference to dates of specific key
8 examinations imporant to Dr. Marx's opinions) (Berger Decl., Exh. 8). He has also
9 submitted expert reports on specific medical causation in patients whom he has not
10 treated. *See*, *e.g.*, Declaration of Robert E. Marx, D.D.S., in *Hogan v. Novartis Pharm.*
11 *Corp.* (June 24, 2009), pp. 3-5 (nine paragraph addendum to original case-specific
12 report, referring to specific deposition testimony and pathologic slides upon which he
13 relied) (Berger Decl., Exh. 9). As the Court can see, Dr. Marx understands the detail
14 that is required of an expert report on specific medical causation.

15   By contrast, the expert reports he has submitted in *Schenk* are grossly deficient.[4]

---

[3] When Dr. Marx was initially deposed in *In re Aredia and Zometa Prod. Liab. Litig.* on May 15, 2007 – before the Schenks filed this lawsuit – he mentioned that OI is a genetic condition that can result in bad teeth and that intravenous bisphosphonates have been used in the treatment of OI. *See* Deposition of Dr. Marx, May 15, 2007, at 102, 105 (Berger Decl., Exh. 7).

[4] Among other things, Dr. Marx's report does not include a curriculum vitae as required by Rule 26. (The last curriculum vitae received from Dr. Marx is dated February 22, 2013.) Although Dr. Marx has previously provided curricula vitae, none produced so far ever mentions the disease suffered by Mr. Schenk, osteogenesis imperfecta. If Dr. Marx has since the last submission of a curriculum vitae obtained any experience with this rare disease, that remains undisclosed.

Nor does Dr. Marx provide a list of the cases in which he has testified in the previous four years. Although NPC is well aware of the Aredia®/Zometa® trials in which Dr. Marx has testified and the depositions he has given in Aredia®/Zometa® cases, without a list as required by Rule 26, NPC has no adequate way of determining what non-BP cases Dr. Marx may have testified in, including cases, if any, relating to OI or cases relating to chronic sinusitis, one of the key problems that Mr. Schenk has had over the years that has impacted his maxilla or upper jaw. S*ee* Deposition of Dr. Craig Brady at

On January 29, 2014, Dr. Marx signed an expert report that contained one bare, conclusory paragraph of opinion:

> After a careful review of these records combined with my knowledge of bisphosphonate bone toxicity and my experience in over 350 cases as well as my experience and considering other possible causes of Mr. Paul Stephen Schenk's jaw problems in a differential diagnosis, I came to the conclusion that he suffered from bisphosphonate induced osteonecrosis of the jaws and not either his osteogenesis imperfecta, osteomyelitis, a dental or sinus infection, or any other diagnosis. Therefore, Aredia and Zometa were the root cause of his osteonecrosis related to a significant accumulation of these bisphosphonates in his jaws from repeated doses.

The report does not explain what Dr. Marx considers to be Mr. Schenk's "jaw problem," when it allegedly began, how it progressed, or whether it is still a problem. Dr. Marx cites his experience and claims to have employed "a differential diagnosis" methodology as to Mr. Schenk, but offers no explanation of how he allegedly employed that methodology to rule out alternative possible causes of Mr. Schenk's unspecified jaw problems. In particular, given that Dr. Marx has never in any expert report submitted in this litigation or any deposition taken to date displayed any knowledge about OI – other than that it is a genetic condition that can result in bad teeth – the report he has recently submitted does not show how he purportedly ruled out OI as the cause of Mr. Schenk's unspecified jaw problem, nor any methodology for ruling out OI, nor any description of any experience in ruling out OI as a cause of "jaw problems" generally.[5]

---

48, 57-59, 62-64 (discussing Mr. Schenk's recurring sinusitis, which may have contributed to his maxillary fractures) (Berger Decl., Exh. 10). Nor has Dr. Marx provided a statement of the compensation paid for his testimony in the *Schenk* case, a statement which would probably demonstrate that he has done virtually no work in forming his opinions specifically for this case.

[5] *See* Declaration of Bruce J. Berger, Para. 3.

Even more troubling is that, in the very next paragraph of this first report (the only report submitted on a timely basis), Dr. Marx noted the importance of his *future* review of multiple x-rays and CT scans that he has not had time to review:

> At this time, I have not had the opportunity to review but have requested readable copies of the many sinus and jaw CT scans that were accomplished as well as long bone films. After reviewing these films, I hold the option to amend this report.

In a case pending since 2007 – a case in which plaintiffs should have had expert opinions on specific medical causation lined up before they began the lawsuit – it is notable that plaintiffs' key expert as of January 29, 2014, had not yet had "opportunity" to review these critically important medical records and was waiting for "readable copies." The opportunity to review and the "readable copies" should have been provided long ago. There are more than 30 CDs containing more than 35 series of CT scans and x-rays and more than 9,000 unique CT images in Mr. Schenk's very complicated medical history. (Declaration of Bruce J. Berger, Para. 2.)

On February 4, 2014, NPC's counsel wrote to plaintiffs' counsel to note that Dr. Marx's report was inadequate and that NPC would move to strike it. In response, plaintiffs submitted a second report of Dr. Marx, also signed by Dr. Marx – but still dated January 29, 2014. (Berger Decl., attached as exhibit 2 to Exh. 3.)

The revised report opines as follows:

> After a careful review of these records combined with my knowledge of bisphosphonate bone toxicity and my experience in over 350 cases as well as my experience and considering other possible causes of Mr. Paul Stephen Schenk's jaw problems in a differential diagnosis, I came to the conclusion that he suffered from bisphosphonate induced osteonecrosis of the jaws and not either his osteogenesis imperfecta, osteomyelitis, a dental or sinus infection, or any other diagnosis.
>
> I am familiar with osteogenesis imperfecta and published on this disease in my textbook Oral and Maxillofacial Pathology. I have also treated numerous cases of true

> osteomyelitis of the jaws. Mr. Schenk's clinical course and CT scan images are consistent with bisphosphonate induced osteonecrosis, not either osteogenesis imperfecta or osteomyelitis. Therefore, Aredia and Zometa were the root cause of his osteonecrosis related to a significant accumulation of these bisphosphonates in his jaws from repeated doses.

From these submissions, plaintiffs would apparently have NPC believe that on January 29, 2014, Dr. Marx could not opine about the 9,000 CT images because he did not have readable copies, but on the same date he *could* opine about the CT images and base opinions on them. Putting aside the misdating of Dr. Marx's second report, however, the revised report still does not refer to any specific CT image or images that informed Dr. Marx's opinion, let alone *explain* how such CT image or images supported his opinion, that Mr. Schenk's jaw condition had been caused by NPC's drugs and could not have been caused by OI. Nor does the report identify what aspects of Mr. Schenk's "clinical course" are inconsistent with OI, or identify what CT images are inconsistent with OI. It does not explain any experience that Dr. Marx allegedly has with OI, let alone how such experience, if any, enables him to rule out OI as the cause of Mr. Schenk's jaw problems.

**ARGUMENT**:

This Court has noted that the requirements of Rule 26 in regard to the disclosures of expert testimony are fundamentally important to the proper and orderly progression of litigation. *See*, *e.g.*, *Cooke v. Town of Colorado City*, No. CV 10-08105-PCT-JAT, 2013 WL 551508 (Feb. 13, 2013). When a party fails to comply with the disclosures requirements of Rule 26, the expert offered by that party cannot be used, unless that party can demonstrate that the failure is "substantially justified or harmless." *See id.* at *3:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1);

> *see Goodman v. Staples the Office Superstore, LLC,* 644 F.3d 817, 826 (9th Cir.2011). If the Court finds that a party did violate Federal Rule of Civil Procedure 26(a), it is that party's burden to show that the violation is substantially justified or harmless. *See Yeti by Molly, Ltd. v. Decker Outdoor Corp.,* 259 F.3d 1101, 1107 (9th Cir.2001).

In this case, plaintiffs cannot show that their failure to comply with Rule 26 regarding Dr. Marx is "substantially justified or harmless."

In *Fernandez v. Chrisman*, No. CV 11-02001-PHX-FJM, 2012 WL 4061665 (Sept. 14, 2012), this Court ruled that a similarly bare statement of an opinion – "completely devoid of any discussion of bases and reasons" – was inadequate under Rule 26. *Id.* at *2. The fact that the opposing party could have taken the expert's deposition did not substantially justify the inadequate report or render it harmless. *Id.* Nor does the fact that a party may at a later date choose to supplement a report substantially justify failure to comply with a scheduling order requiring a complete report as of a certain date nor render the situation harmless. *See Schuette v. City of Phoenix*, No. CV-08-2018-PHX-MHM, 2010 WL 1253193 (March 25, 2010), *3.

Given that this lawsuit was filed in 2007, plaintiffs have had ample time to have their sole retained expert provide an adequate report that complies with all the requirements of Rule 26(a). They cannot show any substantial justification for the hapless reports they submitted from Dr. Marx, which essentially state a general conclusion without providing the bases and reasoning he employed, if any. NPC would have no adequate way to prepare for a deposition of Dr. Marx when his report is so bereft of detail. He does not even identify the particular "jaw problem" to which he directs his opinion.[6] He does not explain how he purportedly used his experience to

---

[6] For example, plaintiffs have identified so-called "damages" witnesses who, when deposed in January 2014, stated that Mr. Schenk's jaw problem was that he did not move his mouth when he ate. *See* Deposition of Ronald Kolkmeyer, Jan. 17, 2014, at 33 (Exh. 11). This is a symptom of temporo-mandibular joint syndrome, a lower jaw problem. Other evidence indicates that Mr. Schenk has had an upper jaw problem related to his chronic sinusitis. *See* note 4 *supra*.

rule out OI as the fundamental cause of the unidentified jaw problem, when his most recent curriculum vitae says nothing about any experience with OI whatsoever.

And, since this case has been pending since 2007, plaintiffs have no excuse for not gathering x-rays and CT scans in a timely fashion and providing them to Dr. Marx so that he can *identify* which pictures support his opinion and explain how they do so. No excuse can exist for plaintiffs' failure to provide these critically important medical records to Dr. Marx in time for the deadline for his expert report. Nor can plaintiffs show that the failure to provide adequate information in Dr. Marx's report is harmless. Dr. Marx himself on numerous occasions has testified about the importance of such records in reaching opinions as to specific causation. *See*, *e.g.*, Marx Dep., *In re Aredia/Zometa Litig.*, (5/26/09) at 1654 (diagnosis of bisphosphonate-induced ONJ includes radiographic diagnosis) (Berger Decl., Exh. 12); Marx Dep., *Bowden v. NPC* (10/20/11) at 57 (to render diagnosis of bisphosphonate-induced ONJ, he reviews radiographs) (Berger Decl., Exh. 13); Marx Dep., *Guenther v. NPC* (4/25/12) at 33-34 (same) (Berger Decl., Exh. 14).

One of the main purposes of requiring a retained expert to provide not only a statement of his opinions but the bases and reasoning underlying those opinions is to allow for appropriate preparation for his deposition. *See*, *e.g.*, *Ballard v. United States*, No. EDCV 06-715-VAP(OPx), 2007 WL 4794101, *3 (C.D. Cal. Aug. 28, 2007) (striking expert report); *Heller v. District of Columbia*, 952 F.Supp.2d 533 (D.D.C. 2013); *Stoney v. Cingular Wireless LLC*, No. 06-CV-02003, 2009 WL 4250069, *6 n.7 (D. Col., Nov. 25, 2009) (rules prevent experts "from 'lying in wait' to express new opinions at the last minute, thereby denying the opposing party the opportunity to depose the expert on the new information or closely examine the expert's new testimony"), citing *Keener v. United States,* 181 F.R.D. 639, 641 (D. Mont. 1998) (prohibiting supplement of expert report to review "brain images" that were available earlier).

Here, the failure of Dr. Marx's report to provide any useful information concerning how he reached his opinion to rule out OI as a cause of Mr. Schenk's jaw problems and to refer to which specific images of more than 9,000 he relies upon precludes NPC from preparing to take a meaningful deposition and thwarts the objectives of Judge Holland's scheduling order. Accordingly, the Court should strike Dr. Marx's reports.

**CONCLUSION**:

For the reasons stated, NPC moves to strike Dr. Marx's expert report.

RESPECTFULLY SUBMITTED this 13th day of February, 2014.

Law Office of Thomas M. Hoidal, P.L.C.


s/ Thomas M. Hoidal
Thomas M. Hoidal

Hollingsworth, L.L.P.


s/ Bruce J. Berger
Bruce J. Berger (*pro hac vice*)
Katherine R. Latimer (*pro hac vice*)
Patrick R. Harkins (*pro hac vice*)

*Attorneys for Defendant Novartis Pharmaceutical Corporation*

**CERTIFICATE OF MAILING**

I hereby certify that on February 13 ,2014, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal to the following ECF registrants. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified below in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

| | |
|---|---|
| **Bruce J. Berger** | bberger@hollingsworthllp.com |
| **Katharine R. Latimer** | klatimer@hollingsworthllp.com |
| **Patrick R. Harkins** | pharkins@hollingsworthllp.com |
| **John J. Vecchione** | jvecchione@valadlaw.com |
| **Martin H. Mathers** | mathers@gmazlaw.com |

By: s/ Thomas M. Hoidal