John J. Vecchione, Esq. (admitted *pro hac vice*)
John J. Vecchione Law, PLLC
3863 Plaza Drive
Fairfax, Virginia 22030
Telephone:  (703) 352-4800
Facsimile:  (703) 352-4820
jvecchione@valadlaw.com

-with-

Martin H. Mathers, Esq.
Martin H. Mathers PC
3101 N. Central Ave., Ste. 970
Phoenix, Arizona 85012
Telephone:  (602) 258-0646
Facsimile:  (602) 258-8287
mathers@gmazlaw.com

*Counsel for Plaintiffs*
*Paul and Gail Schenk*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **PAUL SCHENK,** *et al.***,**<br><br>           *Plaintiffs*,<br><br>   v.<br><br>**NOVARTIS PHARMACEUTICALS CORPORATION,**<br><br>           *Defendant*. | **Case No. 3:12-cv-08223-NVW** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO EXCLUDE THE REPORT OF**
**PLAINTIFFS' EXPERT DR. ROBERT E. MARX, D.D.S.**

Plaintiffs Gary and Gail Schenk, through their attorneys, hereby oppose Defendant

Novartis Pharmaceuticals Corporation's ("Novartis" or "NPC") most recent attempt to

exclude the case-specific opinions and causation testimony of Plaintiffs' expert oral and

maxillofacial surgeon Dr. Robert E. Marx, D.D.S. Before this litigation started it was Novartis that first deemed Dr. Marx an expert on osteonecrosis of the jaw ("ONJ") and its causes when NPC put him on its ONJ advisory panel. It is only now during the pendency of this litigation that NPC has consistently and mostly fruitlessly attempted to exclude him as an expert. Given the history of Dr. Marx's opinions in the MDL and NPC's repeated, vigorous questioning of those opinions, Dr. Marx's report on Mr. Schenk should be viewed as a supplement in the nature contemplated by Judge Campbell when he determined no further depositions of Dr. Marx could be taken until he produces a new report (because of NPC's insistent abuse of the process). In any event, Dr. Marx's report in this case was timely served on Defendant. Plaintiffs reserved the right to supplement the report, and did so expeditiously causing no prejudice to NPC. The report complies with the Federal Rules and NPC's motion should be denied.

## FACTS AND PROCEDURAL HISTORY

Dr. Marx has testified at every Aredia/Zometa trial to date. He has been approved as an expert on diseases of the oral cavity by both the MDL Court and every subsequent court to examine the question. His expertise and experience are not in dispute.

### A.     MDL Reports and Procedural History

Dr. Marx set out his views in a Report in this litigation in the class action stage of the MDL proceedings. *See* Class Stage Report (attached as Exhibit 1). He was deposed on it. He then produced and was deposed on a report for the Plaintiff's Steering Committee ("PSC") that was a basis for Judge Campbell denying NPC's summary judgment motion on whether Aredia and Zometa cause ONJ. *See* MDL Report (attached as Exhibit 2). Both these reports attached his *curriculum vitae* and noted prior testimony. And after NPC's experts opined on various patients in the first "Wave" of cases in the MDL, Dr. Marx

2

submitted a rebuttal report which he was also deposed on.  *See* MDL Rebuttal Report (attached as Exhibit 3).

Novartis moved to strike the MDL Rebuttal Report as improper and exclude Dr. Marx's case-specific views; the MDL Court denied that motion.  *See* Order denying NPC's motion to Exclude Dr. Marx's case-specific opinions (attached as Exhibit 4).  The MDL Court also denied NPC's motion to exclude the totality of Dr. Marx's opinions.  *See* Order denying NPC's motion to Exclude Dr. Marx's case-wide opinions (attached as Exhibit 5).

As the litigation continued Novartis sought to re-depose Dr. Marx in each "wave" of cases progressing through the MDL even though he had not submitted a new report.  Eventually, Judge Campbell had to issue a protective order at the PSC's request that Dr. Marx could not be re-deposed until he had issued a new report.  *See* Marx Protective Order (attached as Exhibit 6).

**B.**     **Schenk Proceedings**

After remand from the MDL this case was eventually transferred to this Court.  In its endless attempts to monopolize Dr. Marx's time for the unforgivable sin of telling the truth about its drugs' causing BRONJ, Novartis demanded—in contravention of the Marx Protective Order (Ex. 6)—to take his deposition regarding osteogenesis imperfect.  NPC sent Plaintiffs a dispute draft on the subject when Plaintiffs relied on the Marx Protective Order to deny NPC's request.  *See* January 22, 2014 e-mail from Bruce J. Berger, Esq. to John J. Vecchione, Esq. transmitting NPC's draft of dispute (attached as Exhibit 7).

Medical records discovery in this MDL has largely been conducted through NPC's agent Medical Research Consultants ("MRC").  *See generally* Declaration of MRC CEO Gretchen Watson dated Dec. 30, 2013 (attached as Exhibit 8).  As the Declaration of John J. Vecchione, Esq. filed in the MDL notes, copies of medical imaging such as x-rays and scans

in these cases are not available through MRC, but are instead kept at the Hollingsworth Firm. *See* Declaration of John J. Vecchione, Esq. dated Nov. 1, 2013 at ¶ 21 (attached as Exhibit 9). After reviewing Mr. Schenk's material Dr. Marx requested certain scans and x-rays referred to in the medical records but not sent to him. Plaintiffs immediately requested those scans from the Hollingsworth Firm. *See* January 27, 2014 email from John J. Vecchione, Esq. to Bruce J. Berger, Esq. requesting medical imaging (attached as Exhibit 10). The Hollingsworth Firm provided the materials promptly but they did not get to Dr. Marx in time for him to digest and incorporate in his report.

In addition, Plaintiffs had already had Dr. Michael J. Mansfield, D.M.D., who lives in Arizona, examine Mr. Schenk and produce and expert report regarding the cause of Mr. Schenk's jaw problems. Dr. Mansfield and his methods in diagnosing BRONJ have already been approved under *Daubert* challenge by Novartis. *See D'Agnese, et al. v. Novartis Pharms. Corp.*, 2013 WL 321773, at *10 (D. Ariz. Jan. 28, 2013).

On January 31, 2014 Plaintiffs, consistent with the Federal Rules and past practice, sent a pleading to NPC indicating their intent to rely on the "case-wide experts" from the MDL, including Dr. Marx. That pleading identified Dr. Marx's Class, MDL and Rebuttal Reports in their entirety. *See* Plaintiffs' F.R.C.P. 26(a)(2)(B) Disclosures (attached as Exhibit 11). Another pleading also included the identification of Plaintiffs' non-retained experts such as Dr. Craig Brady who diagnosed Mr. Schenk with BRONJ. *See* Plaintiffs' F.R.C.P. 26(a)(2)(A) Disclosures (attached as Exhibit 12). The text of the case-wide expert disclosure states: "Plaintiffs explicitly reserve the right to supplement Dr. Marx's case-specific expert report with additional findings from recently produced medical imaging." *See* Ex. 11. The case-wide expert disclosure also included the opinion of Dr. Marx in the Schenk case. *Id.* (Dr. Marx's report dated Jan. 29, 2014 and attached to Plaintiffs' case-wide

4

expert disclosure is referred to as the "Schenk Report").  There, Dr. Marx wrote: "At this time, I have not had the opportunity to review but have requested readable copies of the many sinus and jaw CT scans that were accomplished as well as long bone films.  After reviewing these films, I hold the option to amend this report."  *Id.*  The Schenk Report included what Dr. Marx reviewed as well as the other diseases he ruled out in performing his differential diagnosis.

On January 31, 2014 the Schenk Report, as well as the three previous Marx reports, were noticed to Novartis.  Inadvertently Dr. Mansfield's report was not sent in this disclosure.  Lead counsel John J. Vecchione, Esq. had been traveling on other bisphosphonate cases, but upon his return he reviewed complaints of Mr. Berger and gathered together missing items and sent them to Novartis's attorneys.  *See* Feb. 5, 2014 letter from John J. Vecchione, Esq. to Bruce J. Berger, Esq. ("Expert Supplement Letter") (attached as Exhibit 13).  The Expert Supplement Letter included as Attachment 1 the Dr. Mansfield's Report that had inadvertently not been sent on January 31st.  *Id.*  Attachment 2 was Dr. Marx's Amended Schenk Report.  *Id.*  Having reviewed the requested scans Dr. Marx noted that Mr. Schenk's clinical course and the CT scan and images were consistent with bisphosphonate related osteonecrosis of the jaw, and not "either osteogenesis imperfecta or osteomyelitis."  *Id.*  As Attachment 4 to the Expert Supplement Letter, Mr. Vecchione attached the letter delivering the scans requested to Dr. Marx.  *Id.*  Finally, in order to eliminate any prejudice from the three business day but five calendar day delay in providing the final reports, Plaintiffs noted Defendant could have likewise five additional days.  This was accepted.  *See* Feb. 7, 2014 email from Bruce J. Berger, Esq. to John J. Vecchione, Esq. (attached as Exhibit 14).

**C.      Substance and Sources of Dr. Marx's Opinions Revealed and Well Known to Novartis**

Dr. Marx has listed as publications of his in both the Class Stage Report and MDL Report, and in subsequent reports and at deposition his various writings on Bisphosphonate Related Osteonecrosis of the Jaw. His opinion can be summed up by the statement that very little besides Aredia and Zometa create exposed bone in the mouth and that osteogenesis imperfecta is not a likely candidate to do so.

One of the publications that Dr. Marx has consistently identified as a source for his opinions is his seminal and award winning text book: Robert Marx and Diane Stern, *Oral Maxillofacial Pathology: A Rationale for Diagnosis and Treatment*. Now in its second edition, Dr. Marx's text book was first available in 2001 (but its publication date is Nov. 1, 2002). In his text, Dr. Marx explicitly notes the connection between bisphosphonates, Aredia, and a new disease he referred to at the time as "Drug-Induced Avascular Necrosis of Bone". In fact, Novartis was faxed a chapter of this large volume as early as March 27, 2003, and it is routinely entered as an Exhibit at these trials. *See* PX-812 (attached as Exhibit 15). It states:

> Only a few diseases produce nonviable exposed bone in the jaws: osteoradionecrosis, ostepetrosis, a severe localized area of florid cemento-osseous dysplasia, and chronic osteomyelitis. Most of these can be ruled out by a thorough history and simple radiographs.

*Id.* (at PX-812-4). Dr. Marx has written on the differential for this disease and cited to NPC writings (standards in the oral maxillofacial community) and testified on how a differential is done. He need not be re-deposed every time a specific oral pathology is questioned by Novartis. NPC cannot legitimately claim that osteogenesis imperfecta is suddenly part of the differential for BRONJ. Nonetheless, Dr. Marx has written on that disease as well. Dr. Marx does not have to regurgitate all he knows on "O.I." when he cites

6

his public work on the disease and indeed it does not, in fact, cause BRONJ. Nonetheless, as revealed in his published works cited to and known by Novartis and his attorneys are his views on that disease and that is that it does not cause exposed non-healing bone; treating it with bisphosphonates does.

For example, listed in Dr. Marx's publications and known to Novartis is his 150 page publication on BRONJ entitled, *Oral & Intravenous Bisphosphonate-Induced Osteonecrosis of the Jaws (History, Etiology, Prevention, and Treatment), First Edition*, (Quintessence Publishing Co., Inc. 2007). As noted in the index he twice mentions osteogenesis imperfecta and both times notes that it is the treatment of that disease with bisphosphonates that causes BRONJ. *See id.* at pp. 35-36 and 42-43 (excerpts attached as Exhibit 16) (bisphosphonates given to these patients cause BRONJ).

Finally, Dr. Marx's First Edition of his Pathology text book discusses O.I., as does the Second Edition. *See* Robert Marx and Diane Stern, *Oral Maxillofacial Pathology: A Rationale for Diagnosis and Treatment*, *Second Edition*, (Quintessence Publishing Co., Inc. 2012) (excerpts attached as Exhibit 17). The pages of Marx & Stern II discussing the disease, its expression and its treatment reveal that it simply does not cause BRONJ. *Id.*

Dr. Marx has written on the diagnosis and treatment of O.I. and he referred to it in his report. By listing his publications as he did in his various reports and by citing them in the Schenk Report and Amended Schenk Report, Dr. Marx did not regurgitate all of his writings on the subject. He did not need to. He is an expert oral/maxillofacial surgeon practiced in the diagnosis and treatment of oral disease. O.I. is simply one of the conditions within his purview.

# ARGUMENT

Novartis cites no case, nor could Plaintiffs find one, where a court struck an expert opinion for being late three business days, particularly this far from trial. This is not surprising given the standard. Defendant complains that Dr. Marx's Schenk Report and Supplement are inadequate, that one was late, and that they are therefore to be stricken. This is not so.

Rule 26 requires that an expert reveal all his opinions, what he based them on and in addition, also to provide a *C.V.* and where he testified previously. Dr. Marx was asked whether, upon review of Mr. Schenk's records, his disease was caused by bisphosphonates or had some other cause. Dr. Marx reviewed the documents, requested some scans he was not provided and answered the question presented. Mr. Schenk did not have osteomyelitis nor did his underlying disease cause his ONJ. The bisphosphonates are the real culprits. Dr. Marx identified the other entities he considered and excluded. Plaintiffs in this case produced, by identifying Dr. Marx's MDL approved reports, his *C.V.* In any event, this is not the typical case where the defendant has no experience with plaintiff's expert. The Hollingsworth Firm is the chief deposer of Dr. Marx. It has deposed him for well over thirty days of testimony. It is further aware of his testimony in the related oral bisphosphonate Fosamax litigation. At most Defendant should have requested these items before a deposition, but a motion to strike based on material Defendant has, and knows, better than any individual plaintiff makes a fetish of the expert disclosure procedure.

Courts, as Novartis has reason to know, favor decisions on the merits and deny motions to strike when any perceived failure in the report is curable. *See Novartis Pharms. Corp. v. Actavis, Inc. et. al.*, No. 12–366–RGA–CJB, 2013 WL 7045056, at *12 (D. Del. Dec. 23, 2013) (denying NPC's motion to strike as any lateness or error in the report

curable); *Patton v. Novartis Pharms. Corp.*, No. 4:02–cv–47–DFH–WGH, 2005 WL 5994147 (S.D. Ind. Jul. 25, 2005) (Novartis, by same counsel as here, denied "extreme sanction" of striking expert report). Within this Circuit and district under these circumstances motions to strike are denied. *Dowling v. Arapaio, et al.*, No. CV 09–01401–PHX–JAT, 2011 WL 5592909 (D. Ariz. Nov. 17, 2011) (where original witness and report timely disclosed, supplement would not be struck where cure allowable); *Burger v. Excel Contractors, Inc.*, No. 2:12–cr–01634–APG–CWH, 2013 WL 5781724 (D. Nev. Oct. 25, 2013) (where supplement did not change the expert's opinion and no bad faith shown, motion to strike denied). In this case counsel had to obtain scans he did not have for Dr. Marx. He informed Novartis of this, produced a report anyway, reserved the right to supplement with that specific information, and then produced the final report three business days later after Dr. Marx had reviewed those scans. A parallel extension was volunteered by counsel based on this. There is zero prejudice. This is not a case where either a witness or a document was withheld or not produced timely. Plaintiffs told Novartis the documents it required—and Dr. Marx put in the Schenk Report he had not reviewed the scans he wanted in legible form—and then supplemented in the few days it took him to do so.

In this case, Dr. Marx explains that Mr. Schenk's use of bisphosphonates caused his osteonecrosis of the jaw. Mr. Schenk's clinical course and medical record are clear for BRONJ. This is the same view as that of his treaters. Dr. Marx explains the general diagnosis and etiology of BRONJ in his case-wide reports. He need not, and indeed in the interests of brevity should not, repeat that lengthy analysis here. Further, Novartis seems to think Dr. Marx has to say why O.I. did not cause Mr. Schenk's ONJ, but his reasoning is clear both in the Schenk Report, the Supplemental Schenk Report, and in Dr. Marx's cited and published works. O.I. does not cause ONJ. Treatment of O.I. with bisphosphonates

9

causes ONJ. Novartis cannot say "he did not exclude the common cold" and strike a report on its own *ipse dixit* of what it includes. Dr. Marx has given his full opinion in these reports and they are certainly compliant with the Federal rules as they say what he believes and what he reviewed to believe it. He does not have to regurgitate his writings on O.I. when he has directed Novartis to them.

Even if there were a deficiency in providing his opinion in the Schenk Report—and there is not—Novartis already set up a dispute and informed undersigned counsel they were going to seek a deposition of Dr. Marx. It cannot now complain that it will have to depose Dr. Marx without motion practice on the new report. In the posture of this case any "deficiency" is even more harmless than usual and no cause to strike a report. *See Van Horn v. Hornbeak*, No. 1:08-cv-1622-LJO-DLB, 2010 WL 960364, at *2 (E.D. Cal. Mar. 16, 2010) (even when report inadequately states physician's views motion to strike denied because of curability, noting strong preference for decisions on the merits).

**A.     The Marx Schenk Opinions Are Adequate**

This Court has refused to strike expert reports after review and determining the information in the report is congruent with the record. *See Ball v. Rodgers*, No. CV 00–67–TUC–EHC, 2010 WL 797146, at *10-11 (D. Ariz. Mar. 8, 2010). Dr. Marx has simply provided opinions on record material from Mr. Schenk's treaters. He has identified what he thought important and informed the Defendant what he believed contributed to his view that its drugs, particularly the doses and duration, caused Mr. Schenk's disease. That is all the Federal Rules require. This Court has also noted that the ability to cross-examine the expert at trial and make objections is further reason not to strike an expert report. *Research Corp. Technologies, Inc. v. Microsoft Corp.*, No. CV–01–658–TUC–RCJ, 2009 WL 2913873 (D. Ariz. Aug. 19, 2009). Everything the Defendant complains about in its motion to strike is

fodder for cross-examination, not a motion to strike. The views expressed by Dr. Marx are consistent with his prior testimony, reports, and, indeed, the pleadings. *Genentech, Inc., v. the Trustees of the University of Pennsylvania*, No. C 10–2037 LHK (PSG), 2012 WL 424985, at *5(N.D. Cal. Feb. 9, 2012) (reports that do not contain unrevealed theories of the case and would not be struck).

Dr. Marx adequately explained what he thought causes ONJ generally, and what caused Mr. Schenk's ONJ specifically. He identified the x-rays and history that he believed important to the diagnosis and he identified the writings where he discussed O.I. and its sequelae as compared to BRONJ. This is more than enough under the federal rules. *See Nicholson v. Medina*, No. , 2:10–cv–01425–KJM–EFB, 2013 WL 6198187 (E.D. Cal. Nov. 27, 2013) (physician's testimony that identified the records he reviewed and basis for his opinion sufficient). Here, Dr. Marx has not only stated his differential diagnosis in this case, but also published a text book on what is in that differential and how to discern between different oral pathologies. O.I. is in the instant case a "red herring" by Novartis. In *every* case Novartis states something else other than its drugs caused the plaintiff's jaw problem. O.I. is just the latest MacGuffin. Dr. Marx does not have to do anything more than identify he understands the disease, and his opinion on this presentation and history is that it is bisphosphonates that cause it. That is what he did.

Novartis argues that his report is not as large or thorough as in the MDL. While it is not as large, it is adequate to what was asked and the differences between the reports is immaterial to the Court's analysis except that the expert disclosure in this case timely disclosed both the Schenk Report and Supplemental Schenk Report and the other Marx reports and they must be read in conjunction. A *C.V.* was provided. Prior testimony was provided. A bibliography was provided and Dr. Marx's particular documents used in this

case were provided. There is no requirement that Dr. Marx review every medical record to reach his opinion when he told Novartis exactly what he reviewed and asked for certain additional materials before rendering his final report. This motion to strike is of a piece with NPC's efforts to endlessly depose Dr. Marx, first observed and ordered stopped in the MDL. Novartis wants to induce burn out so that a practicing physician and the head of a large university based practice is sidelined. The Federal Rules ought not be interpreted to reach such an unjust result.

Novartis asked for a deposition before Dr. Marx issued his report. They will get one. Any questions about it they will ask. This motion to strike should be denied.

B.  **Dr. Marx's Opinions Are Timely**

As an initial matter the Dr. Marx's reports are timely. Plaintiffs explained to Defendant before the deadline that Dr. Marx had asked for certain scans not in their possession and would be reviewing them. They disclosed his opinion timely in the Schenk Report and the Supplemental Schenk Report did not substantially differ from that when provided three business days later. Under such circumstances an opinion is not untimely. *Spring Design v. barnesandnoble.com*, No. C 09–05185 JW, 2010 WL 5422556 (N.D. Cal. Dec. 20, 2010) (opinions of expert that are not different from expert report are not "late" under Rule 26 and do not cause prejudice). In any event, counsel did not have the documents Dr. Marx asked for, and because of the process followed in the MDL Defendant had those documents. This is simply not the bad faith or neglect that the rules contemplate for striking an expert report.

C.  **Any Failure of the Report is Curable by Less Drastic Sanction**

To the extent there is a technical deficiency on prior testimony (and from opposing over thirty summary judgments in Aredia/Zometa cases thus far Plaintiffs' counsel is well

aware Novartis has a database of Dr. Marx's testimony,) or some material issue to update on his *C.V.*, the Court can order that. It is simply not something one strikes the report of a long time expert who the Defendant has deposed over thirty times and has testified in a dozen Aredia and Zometa cases. *See, e.g., Pierce v. CVS Pharmacy, Inc.*, No. CV 06–823–PHX–MHM, 2007 WL 2725228 *(*D. Ariz. Sept. 17, 2007) (no prejudice to allowing plaintiff to fix deficiencies); *Noyes v. Kelly Services*, No. CIV S-02-2685-GEB-CMK, 2007 WL 4287789, at *5 (E.D. Cal. Dec. 7, 2003) (failure to provide former testimony is cured by providing it not striking report).

## CONCLUSION

In short, Dr. Marx has explained the basis of his opinion adequately, particularly given the entire disclosure on January 31, 2014 and supplement a few days later. In any event, the drastic sanction of striking a report is not warranted under these circumstances.


Dated:  March 4, 2014                    Respectfully Submitted,

/s/ John J. Vecchione
John J. Vecchione, Esq. (admitted *pro hac vice*)
John J. Vecchione Law, PLLC
3863 Plaza Drive
Fairfax, Virginia 22030
Telephone:  (703) 352-4800
Facsimile:  (703) 352-4820
jvecchione@valadlaw.com

-with-

Martin H. Mathers, Esq.
Martin H. Mathers PC
3101 N. Central Ave., Ste. 970
Phoenix, Arizona 85012
Telephone:  (602) 258-0646
Facsimile:  (602) 258-8287
mathers@gmazlaw.com

*Counsel for Plaintiffs*
*Paul and Gail Schenk*

Case 3:12-cv-08223-NVW   Document 42   Filed 03/04/14   Page 14 of 15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 4, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Katharine R. Latimer, Esq.
Bruce Berger, Esq.
Patrick R. Harkins, Esq.
HOLLINGSWORTH LLP
1350 I Street NW
Washington, DC  20005
Telephone: 202-898-5800
Facsimile: 202-682-1639
klatimer@hollingsworthllp.com
pharkins@hollingsworthllp.com

Thomas M. Hoidal
Law Office of Thomas M. Hoidal PLC
7227 N. 16th St., Ste. 222
Phoenix, AZ 85020
Telephone: 602-254-0202
Facsimile: 602-254-0404
thoidal@hoidallawoffice.com

*Counsel for Defendant Novartis Pharmaceuticals Corporation*

/s/ John J. Vecchione
John J. Vecchione, Esq. (admitted *pro hac vice*)