Katharine R. Latimer (admitted *pro hac vice*)
klatimer@hollingsworthllp.com
Bruce J. Berger (*admitted pro hac vice*)
bberger@hollingsworthllp.com
Hollingsworth, LLP
1350 I Street, N.W.
Washington, DC 20005
Telephone:   (202) 898-5800
Facsimile:    (202) 682-1639

Thomas M. Hoidal, Bar No. 007194
Law Office of Thomas M. Hoidal, P.L.C
7227 North 16th Street, Suite 222
Phoenix, Arizona 85020-5257
thoidal@hoidallawoffice.com
Telephone:   (602) 254-0202
Facsimile:    (602) 254-0404

Attorneys for Defendant Novartis Pharmaceuticals Corporation

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Schenk, *et al.*,<br><br>                    Plaintiffs,<br><br>        v.<br><br>Novartis Pharmaceuticals Corp.,<br><br>                    Defendant. | **No.:  CR-12-08223-PCT-NVW**<br><br>**NOVARTIS PHARMACEUTICALS CORPORATION'S REPLY IN SUPPORT OF MOTION TO STRIKE EXPERT REPORT OF ROBERT MARX, D.D.S.** |

In 15 pages of briefing and 313 pages of attachments, plaintiffs have still failed to demonstrate the adequacy of Dr. Marx's reports.  Rather, plaintiffs used invective and rhetoric directed at non-issues.  NPC has *not* moved to strike Dr. Marx's reports because they were untimely.  NPC has *not* moved to exclude the opinions in Dr. Marx's "class" report, "MDL" report, or "rebuttal" report.  NPC has *not* moved with regard to the late-filed report of Dr. Mansfield, another oral and maxillofacial surgeon, which provides an adequate discussion of the bases and reasons for his causation opinions.

-1-

The present motion has nothing to do with the "burn out" of Dr. Marx. Plaintiffs elected to name him as one of two retained case-specific experts. The sole question presented by NPC's motion, which plaintiffs never adequately address, is whether Dr. Marx's reports in this case provide the bases and reasons for his opinions. They do not. The Court need only look at the reports and compare them to the detailed case-specific reports that Dr. Marx has given in other Aredia® and Zometa® cases, *see* ECF No. 39-1, Exs. 8-9, to understand that Dr. Marx has failed to provide an adequate discussion of the bases and reasons for his opinion in this case.

1. Plaintiffs Fail to Show that Dr. Marx's Report Complies with Rule 26.

Plaintiffs do not contest that the CT scans and x-rays sought by Dr. Marx include more than 9,000 images, that plaintiffs' counsel could have obtained these himself as early as 2007, and that neither of Dr. Marx's reports indicate which images, if any, he is relying upon as a basis for his opinion.[1] And, despite the fact that plaintiffs assert Dr. Marx has expertise on the issue of OI by citing pages from his 2012 treatise, they do not contest the fact that none of the other more than 800 Aredia®/Zometa® cases involves a patient with OI and that Dr. Marx has never been deposed on his knowledge of OI or what effects it has on a patient's jaw.

---

[1] By contrast, the expert report of Dr. Reed Day submitted by NPC on February 28, 2014 notes exactly which images Dr. Day is relying upon in his opinions. *See*, *e.g.*, Second Declaration of Bruce J. Berger in Support of NPC's Motion to Strike Expert Report of Dr. Robert Marx ("Second Berger Decl."), Ex. 1 (Day Report), ¶ 29 ("Mr. Schenk returned to the Navapache Regional Medical Center for another *CT sinuses on July 29, 2005*, again read by Dr. McEvoy, whose findings were virtually identical, with the exception that the sinusitis in the left ethmoid sinus had increased. There was no improvement in Mr. Schenk's maxillary sinusitis. Rather, the report indicates that sinusitis (as seen by opacification) extended from the maxillary sinus 'into the left nasal passage.' In my review of these CT images, *e.g.*, *I note that the image ending in .48 shows communication between the floor of the sinus and the maxillary ridge*. This is a path by which infection can easily pass from the sinus cavity into the maxillary bone, making it impossible to rule out by any reliable means a primary sinus infection as the incipient cause of Mr. Schenk's maxillary problems. *The image ending in .41* is one of many that demonstrate a significant deviation of the septum towards the left . . . . Similar images can be seen in the CT scan taken June 2, 2005") (emphasis added).

Nor do plaintiffs even contest the fact that Dr. Marx's reports do not indicate which "jaw injuries" he is opining about.  As NPC showed in its original memorandum, one problem identified by plaintiffs' fact witnesses is related to temporomandibular joint syndrome, a lower jaw problem, but Mr. Schenk has also had upper jaw problems, *i.e.*, chronic maxillary sinusitis connecting to his jaw.  *See* note 1 *infra.*  Despite the efforts of plaintiffs' counsel to fill in the gaps in Dr. Marx's reports, NPC *still* has no idea which jaw injuries Dr. Marx intends to opine about.  This information should have been described in his reports, but was not, and NPC is left to guess as to which jaw injuries Dr. Marx is addressing.

Most importantly, Dr. Marx's reports do not explain how he rules out OI as the likely cause of Mr. Schenk's "jaw injuries."  Mr. Schenk himself has stated his belief that his jaw injury is reflected in multiple "fractures" of his upper jaw.  *See* 8/21/2012 Deposition of Paul Schenk at 111-12, Second Berger Decl., (Ex. 2) (discussing fracture in left maxillary area).  Now, plaintiffs themselves have put the information from Dr. Marx's treatise before this Court which shows that OI *is* associated with fractures. From Dr. Marx's treatise, the Court can accept as true that OI causes  "multiple fractures," ECF No. 42-17 (Marx Treatise) at 232, makes bones "prone to fracture," *id.*, is a condition in which "fractures are common," *id.* at 233, in which "individuals . . . tend to have multiple bone fractures," *id.*, and in which one would *expect* "jaw fractures in these individuals," *id.* at 235.  Additionally, Dr. Marx's treatise shows that OI is "extremely varied," *id.* at 232, and has "many clinical expressions," *id.* at 233.[2] Plaintiffs would have the Court believe that Dr. Marx has demonstrated in his reports the bases and reasons for *excluding* OI as a cause of "jaw injuries."  The reports do nothing of the sort.

---

[2] Contrary to plaintiffs' counsel's assertion, the OI section of Dr. Marx's textbook does not assert that OI cannot lead to necrotic jaw bone. *See* ECF No. 42 at Ex. 17.

2.    <u>Plaintiffs Fail to Show That the Submission of Inadequate Reports Is Substantially Justified</u>.

Plaintiffs do not dispute that they have had seven years since they filed this case to put the necessary medical records into Dr. Marx's hands and that they failed to do so until after the disclosure deadline.  That NPC also has copies of the CT scans and provided them to plaintiffs' counsel – within one day of their request – does not mean that plaintiffs' counsel had no means to obtain them earlier themselves.  Plaintiffs have not offered any justification for failing to provide to Dr. Marx the medical records he has always claimed are critical in his review of these cases.[3]

Nor does the fact that NPC may have deposed Dr. Marx multiple times concerning his general causation opinions and his opinions as to other plaintiffs – none of whom had "brittle bone disease" – justify plaintiffs' failure now to provide an adequate report *as to Mr. Schenk*.  Whatever opinions he has been allowed to offer in *other* cases, in *this* case Dr. Marx must still demonstrate that his opinions are scientifically reliable and that he has reliably ruled out OI as a cause of Mr. Schenk's alleged jaw fractures.  *Hoss v. United Parcel Serv., Inc.*, CV 08-498-N-BLW, 2010 WL 672743 at \*3 (D. Idaho Feb. 20, 2010) (expert reports must meet the indicia of reliability required under Rule 702).   Under the federal rules, to be allowed to opine that he reliably ruled out OI as a cause of Mr. Schenk's problems, Dr. Marx is required first to submit an expert report which not only provides a "bottom line" but also explains the bases, reasons, and methodology by which the bottom line was reached.  Fed. R. Civ. P. 26(a)(2)(B).[4]  NPC cannot fairly be expected to dig out those reasons while cross-examining Dr. Marx in front of a jury.[5]

---

[3] Plaintiffs assert seven times in their opposition that Dr. Marx's reports are timely, but NPC is not moving to strike them because they are untimely; NPC is moving to strike Dr. Marx's reports because they are inadequate.  A timely but inadequate report is still inadequate.

[4] Dr. Marx's delivery of a mere "bottom line" opinion resulted in that opinion's exclusion under *Daubert*.  *Perkins v. Novartis Pharm. Corp.*, Civ.A. No. 12-662, 2013

-4-

3.    Plaintiffs Have Failed to Show that the Submission of Inadequate Reports Is Harmless.

Nor have plaintiffs demonstrated that the submission of inadequate reports is harmless.  For one thing, prejudice accrues because NPC was required to disclose its expert reports before plaintiffs adequately set forth their own.  "[T]he party with the burden of proof on an issue should disclose its expert testimony on that issue *before* other parties are required to make their disclosures with respect to that issue."  Fed. R. Civ. P. 26, 1993 advisory committee's note (emphasis added); *see Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, C 01-20418 JW, 2005 WL 1459572 at *2 (N.D. Cal. June 21, 2005) (plaintiffs must disclose expert reports first where they have the burden of proof).  Here, plaintiffs carry the burden of proof on all claims, and the prejudice to NPC caused by Dr. Marx's inadequate disclosure is that, before providing any detail about his own opinions, NPC has been forced to reveal the detailed opinions of its *responsive* case-specific expert, Dr. Day.  *See* Scheduling Order, ECF No. 32.

---

WL 2949045, at *3 (W.D. La. June 14, 2013) (excluding Dr. Marx opinions as "classic *ipse dixit*").

[5] Cases cited by plaintiffs reflect substantially different factual situations.  In *Pierce v. CVS Pharmacy, Inc.*, No. CV 06-823-PHX-MHM, 2007 WL 2725228 (D. Ariz. Sept. 17, 2007), the party who had submitted inadequate reports had made efforts to substantially cure the deficiencies.  *Id.* at *4.  Plaintiffs, here, however, have made no effort to cure any of the deficiencies noted in Dr. Marx's reports.  In *Nicholson v. Medina*, No. 2:10–cv–01425–KJM–EFB, 2013 WL 6198187 (E.D. Cal. Nov. 27, 2013), the report that the court deemed sufficient was substantially more detailed than both of Dr. Marx's reports put together, extended for 6 typed pages and 20 paragraphs, and profusely cites specific dates of medical records upon which the expert based his opinion.  *Id.* at *3 (citing Expert Report of John H. Fullerton); *see* Second Berger Decl., Ex. 3 (Fullerton report).  In other cases cited by plaintiffs, sufficiency under Rule 26(a)(2)(B) was not even discussed.  *See*, *e.g.*, *Research Corp. Tech., Inc. v. Microsoft Corp.*, No. CV-01-658-TUC-RCJ, 2009 WL 2913873 (D. Ariz. Aug. 19, 2009) on reh'g, CV-01-658TUCRCJ, 2009 WL 2971755 (D. Ariz. Aug. 19, 2009).

Harm also arises from the fact that NPC does not have an adequate basis upon which to prepare for a deposition of Dr. Marx concerning Mr. Schenk, *in particular*, which of more than 9,000 images Dr. Marx is relying upon to rule out OI and/or sinusitis as the cause of Mr. Schenk's upper jaw problem.  NPC – citing specific images – has demonstrated that there is a path by which infection could have easily spread from Mr. Schenk's sinus cavity into his maxillary bone, making it impossible to rule out by any reliable means a primary sinus infection as the incipient cause of Mr. Schenk's maxillary problems.  *See* Day Report, note 1 *supra*.  NPC has no way to know about which of the other 9,000 CT images it must prepare to question Dr. Marx, if he is deposed.  NPC cannot be expected to sit in a deposition room with Dr. Marx, showing him each of these images one-by-one, until it happens to hit on the image or images upon which Dr. Marx is relying.  In contravention of the purpose of the rules of expert disclosure, plaintiffs have set it up such that NPC cannot adequately prepare for Dr. Marx's deposition.  *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) ("Under Rule 26(a), a 'report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'").

Finally, plaintiffs suggest that the inadequacies in Dr. Marx's reports can be fixed.  But they cannot be fixed without substantially delaying the pretrial schedule and continuing to bump this long-lingering case down the road.  Allowing Dr. Marx to file an adequate – but untimely – expert report would necessitate likewise allowing NPC's case-specific experts to file new reports as well, as they must have an opportunity to respond to and rebut opinions offered by Dr. Marx.  For example, if Dr. Marx were to identify the CT images and/or x-rays upon which he is purportedly relying to rule out OI and/or sinusitis as a cause of Mr. Schenk's jaw problems, NPC's experts would need to submit revised reports as well to look at those specific images and render their

responsive opinions.  This would inevitably and substantially delay resolution of this case.

Judge Martone faced a nearly identical situation in *Fernandez v. Chrisman*, No. CV 11-02001-PHX-FJM, 2012 WL 4061665 (D. Ariz. Sept. 14, 2012), which NPC cited on p. 8 of its motion but which plaintiffs have ignored, ECF No. 39.  There, the expert report at issue was "deficient" because it was "completely devoid of any discussion of the basis and reasons" and was "conclusory" and offered "no insight into [the expert's] analysis," not even specifying the particular facts as to which the expert was opining, *id.* at *2, just as here, the particular "jaw injuries" are left unspecified and the reports are devoid of discussion of bases and reasons.  The Court rejected "re-shifting of the remaining deadlines in the scheduling order." *Id.*  In the nearly identical situation, the Court ruled that exclusion of the report was the appropriate remedy.  The same applies here.

**CONCLUSION**:

For the reasons set forth in NPC's original motion, ECF No. 39, and above in reply, the Court should strike Dr. Marx's report and let this case proceed on the basis of the other expert reports plaintiff has submitted.

RESPECTFULLY SUBMITTED this 10th day of March, 2014.

*s/* Bruce J. Berger

Katharine R. Latimer (*admitted pro hac vice*)
Bruce J. Berger (*admitted pro hac vice*)
bberger@hollingsworthllp.com
  HOLLINGSWORTH LLP
  1350 I Street, N.W.
  Washington, DC 20005
  (202) 898-5800
  (202) 682-1639 (fax)

Thomas M. Hoidal, Bar No. 007194
Law Office of Thomas M. Hoidal, P.L.C
7227 North 16th Street, Suite 222
Phoenix, Arizona 85020-5257
thoidal@hoidallawoffice.com
Telephone:   (602) 254-0202
Facsimile:    (602) 254-0404

*Attorneys for Defendant*
*Novartis Pharmaceuticals Corporation*

## **CERTIFICATE OF MAILING**

I hereby certify that on <u>March 10, 2014</u>, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal to the following ECF registrants.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified below in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

**Katharine R. Latimer**          **klatimer@hollingsworthllp.com**

**Patrick R. Harkins**          **pharkins@hollingsworthllp.com**

**Thomas M. Hoidal**          **thoidal@hoidallawoffice.com**

**John J. Vecchione**          **jvecchione@valadlaw.com**

**Martin H. Mathers**          **mathers@gmazlaw.com**

<u>COPY</u> of the foregoing mailed this same date to:

The Honorable Neil V. Wake
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 524
401 West Washington Street, SPC 52
Phoenix, Arizona 85003

John J. Vecchione, Esq.
JOHN J. VECCHIONE LAW, PLLC
3863 Plaza Drive
Fairfax, Virginia 22030

   <u>and</u>

Martin H. Mathers, Esq.
MARTIN H. MATHERS, PC
3101 North Central Avenue, Suite 970
Phoenix, Arizona 85012
*Attorneys for Plaintiffs*

By:  s/ Bruce J. Berger