**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Schenk, et al., | No. CV-12-08223-PCT-NVW |
| Plaintiffs, | **ORDER** |
| v. | |
| Novartis Pharmaceuticals Corporation, | |
| Defendant. | |

Before the Court is Defendant Novartis Pharmaceuticals' First Motion to Strike Expert Report of Robert Marx, D.D.S. (Doc. 39), Plaintiffs' Response (Doc. 42), and Defendant's Reply (Doc. 44). Novartis made an error in uploading the exhibits supporting its First Motion to Strike (Doc. 39) and failed to include a copy of the report challenged by its First Motion. When the Court requested a copy of the missing report, Novartis instead chose to file a Second Motion to Strike Expert Report of Robert Marx, D.D.S. (Doc. 75). The Second Motion (Doc. 75) is identical to the First Motion (Doc. 39), except that the correct exhibits are attached.

Before the Court is also Novartis' Motion to Exclude Dr. Robert Marx's Specific Causation Opinions (Doc. 60). This Motion (Doc. 60) is substantially similar to the First Motion to Strike Expert Report of Robert Marx, D.D.S. (Doc. 39), as it also challenges whether Dr. Marx has supplied an adequate basis for his expert causation opinion. Although the Motion to Exclude Dr. Robert Marx's Specific Causation Opinions (Doc. 60) is better reasoned than Novartis' First Motion to Strike Expert Report (Doc. 39), the motions address the same core issue, and the Court would have

been better served if Novartis had taken the time to consolidate its arguments against Dr. Marx's case-specific testimony into a single motion.

Despite the overlap, Novartis' First Motion to Strike Expert Report of Robert Marx, D.D.S. (Doc. 39) and its Motion to Exclude Dr. Robert Marx's Specific Causation Opinions (Doc. 60) will be granted. Novartis' Second Motion to Strike Expert Report of Robert Marx, D.D.S (Doc. 75) will be denied as unnecessary and duplicative.

## I.   FACTS

### a.   Background

This action is one of over eight hundred product liability suits currently pending against Novartis Pharmaceuticals its products Aredia and Zometa. Aredia and Zometa are bisphosphonate drugs primarily indicated for the prevention of bone fractures in patients with hypercalcemia of malignancy in cancers that have metastasized to the bone. All pending cases concern Novartis' alleged failure to warn of the risk of osteonecrosis of the jaw associated with use of the two drugs. This action differs from the other cases filed because Plaintiff Paul Schenk was not prescribed Aredia and Zometa for metastasized cancer, but was instead prescribed the drugs off-label to prevent fractures associated with a rare genetic disease: osteogenesis imperfecta. This action is brought against Novartis by Paul Schenk and his wife.

### b.   Dr. Marx's Expert Report

The Schenks served disclosures for six non-retained experts, including Dr. Robert Marx, on the final date for such disclosures, January 31, 2014. Some disclosures were general, such as the statement that they planned to rely on expert reports submitted in the multi-district litigation from which this case was remanded. *See In re: Aredia and Zometa Prods. Liab. Litig.*, Dck. No. 3:06-MD-1760, pending in Middle District of Tennessee. Two disclosures were specific to Dr. Marx. One was for a case-wide report served in the class action stage of the multi-district litigation dated October 6, 2008. Another was for a case-specific causation report which discussed Mr. Schenk's medical records and his genetic condition. The case-specific report was dated January 29, 2014.

On February 4, Novartis informed the Plaintiffs that Dr. Marx's case-specific report was inadequate and that Novartis would move to strike it. In response, the Plaintiffs immediately submitted a second case-specific report from Dr. Marx, also dated January 29, 2014.

Novartis also objected to the second report and proceeded to file this First Motion to Strike Expert Report of Robert Marx, D.D.S. (Doc. 39), alleging that neither Dr. Marx's first case-specific report nor his second, revised report complies with the Federal Rules of Civil Procedure. Novartis' First Motion to Strike (Doc. 39) seeks only to exclude Dr. Marx's case-specific reports. It does not seek to exclude Dr. Marx's more generalized, case-wide opinions in other reports.

Dr. Marx's First Report (Doc. 39, Exh. 2) is a half-page letter stating that he has reviewed medical records and the deposition testimony listed the sheets attached to his letter. The letter states that after careful review of the record, combined with his knowledge of bisphosphonate bone toxicity, experience in over 350 cases, and his consideration of other possible causes of Mr. Schenk's jaw problems, he has concluded that Aredia and Zometa were the root cause of Mr. Schenk's osteonecrosis of the jaw, and that the osteonecrosis was not the result of Mr. Schenk's genetic condition or any other cause. No other details, such as what 350 cases were reviewed or what specific facts or information led to his conclusion, are provided in the letter. The letter also states that Dr. Marx has not yet had a chance to review copies of Mr. Schenk's "many sinus and jaw CT scans that were accomplished as well as long bone films" and that he reserves the right to amend the report after reviewing such films. (Doc. 39, Exh. 2).

Attached to the letter is a single page with listings which appear exactly as follows:

```
Medical Records Reviewed
    1. Medical records    Craig Brady DO    8739-0177 to 8739-0188
    2. Medical records    Craig Brady DO    8739-0157 to 8739-0164
       . . .
    14. Shaw Low Medical Center              6360-0028 to 6360-0261
```

(Doc. 39, Exh. 2). The list contains twelve nearly identical listings for "Craig Brady DO"

- 3 -

and four listings for records from medical centers.  It is not possible to infer the content of the medical records reviewed from the information provided.  The attachment also lists the names of people whose depositions were reviewed by Dr. Marx but provides not information concerning the subject matter or content of the depositions.

Dr. Marx's Second Report (Doc. 75, Exh. 3) was submitted to Novartis four days past the disclosure deadline on February 4, 2014 but is dated the same date as his First Report: January 29, 2014.  It is nearly identical to the First Report, except with two additions.  The first is that Dr. Marx demonstrates his familiarity with Mr. Schenk's genetic disease, osteogenesis imperfecta, by stating he has treated many cases of true osteomyelitis of the jaws caused by the genetic disease and has published on the disease in his textbook *Oral and Maxillofacial Pathology*.  The second is that Dr. Marx states he has reviewed Mr. Schenk's CT scans and has found they confirm that Mr. Schenk's osteonecrosis is bisphosphonate induced and not a product of osteogenesis imperfecta or osteomyelitis.  The Second Report is followed by the same single page attachment as the First Report.  No additional support for his conclusions is provided.

Novartis seeks to strike both Dr. Marx's First and Second Report based on the Reports' failure to comply with the Federal Rules of Civil Procedure.  Novartis also seeks to strike the Second Report because it was disclosed four days after the deadline for expert disclosures.  Novartis alleges that although the Second Report is dated the same day as the First Report, it is unlikely the Second Report was prepared the same day because if Dr. Marx had been able to review Mr. Schenk's CT Scans before the disclosure deadlines, the Schenks would have disclosed that information in a timely manner.

## II.   APPLICABLE RULE

In its Motion, Novartis alleges Dr. Marx's Reports fail to comply with Federal Rule of Civil Procedure 26(a)(2)(C).  The Schenks, however, disclosed Dr. Marx as a witness under Federal Rule of Civil Procedure 26(a)(2)(B), not (C).  (Doc. 39, Exh. 3).  This distinction is important because subsections (B) and (C) distinguish between a "percipient witness who happens to be an expert and an expert who, without prior

knowledge of the facts giving rise to litigation, is recruited to provide expert opinion testimony." *Downey v. Bob's Disc. Furniture Holdings*, 633 F.3d 1, 3 (1st Cir. 2011). Experts under subsection (C) generally have actual involvement with the events giving rise to the litigation, and the disclosure required under Rule 26(a)(2)(C) "is considerably less extensive than the report required by Rule 26(a)(2)(B)." Fed. R. Civ. P. 26(a)(2)(C), Advisory Committee's note 2010.

It is unclear whether Novartis' mistake resulted from a typographical error or a genuine misunderstanding of the Rules of Civil Procedure. The Court only discovered the issue after trying to make sense of Dr. Marx's expert report, given that Novartis' Motion (Doc. 39) classified him as a treating physician expert. The Court presumes Novartis alleges Dr. Marx's Reports fail to comply with Federal Rule of Civil Procedure 26(a)(2)(B).

### III. APPLICATION TO DR. MARX'S REPORT

A party planning to present a witness retained specifically to present expert testimony must provide a report prepared and signed by the witness along with the initial expert witness disclosure. Fed. R. Civ. P. 26(a)(2). This report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Rule 26(a)(2)(B). If a report is not submitted in accordance with Rule 26(a), the court has the discretion to exclude the evidence associated with the expert "on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir.2001) (noting that "[t]wo express exceptions ameliorate the harshness of Rule

- 5 -

37(c)(1): The information may be introduced if the parties' failure to disclose the required information is substantially justified or harmless").

It is undisputed that Plaintiffs did not include any of the information required by subsections (iv) & (v) of Rule 26(a)(2)(B) in Dr. Marx's First or Second Report. Plaintiffs argue submitting this information was unnecessary because Novartis already had access to Dr. Marx's qualifications and publications though his participation in related actions and the earlier, class-action stages of this case. While the error in failing to submit this information is likely harmless, as Novartis has clear access to the information required by subsections (iv) & (v), it must also be noted that the Schenks also had the same, clear access to the necessary information. Plaintiffs could have easily included the required information with the disclosure reports, thereby complying with the Rule and saving both the parties and the court this runaround.

But it is not the omission of the information required by subsections (iv) and (v) that provides the impetus for striking Dr. Marx's case-specific Reports. The Reports will be stricken because they are conclusory and fail to provide any factual support for the opinion they express. The entire text of Dr. Marx's Second Report is as follows:

> As per your request, I have reviewed copies of medical records and copies of deposition testimonies as indicated in the attached sheets. I have also reviewed CT scans taken of Mr. Schenk at the Navopage facility.
>
> After careful review of these records combined with my knowledge of bisphosphonate bone toxicity and my experience in over 350 cases as well as my experience and considering other possible causes of Mr. Paul Stephen Schenk's jaw problems in differential diagnosis, I came to the conclusion that he suffered from bisphosphonate induced osteonecrosis of the jaws and not either his osteogenesis imperfecta, osteomyelitis, a dental or sinus infection, or any other diagnosis.
>
> I am familiar with osteogenesis imperfecta [Mr. Schenk's genetic disease] and published on this disease in my textbook Oral and Maxillofacial Pathology. I have also treated numerous cases of true osteomyelitis of the jaws. Mr. Schenk's clinical course and CT scan images are consistent with bisphosphonate induced osteonecrosis,

>   not either osteogenesis imperfecta or otesomyelitis. Therefore,
>   Aredia and Zometa were the root cause of his osteonecrosis related
>   to a significant accumulation of these bisphosphonates in his jaws
>   from repeated doses.

(Doc. 75, Exh. 3). Dr. Marx's First Report (Doc. 39, Exh. 2) contains even less detail than the Second Report above, and the contents of the First Report are entirely subsumed into the Second.

Dr. Marx's Report fails because it does not include facts in support of his conclusion that Schenk's jaw damage is the result bisphosphonate toxicity. Fed. R. Civ. P. 26(a)(2)(B)(ii) (requiring expert reports to include "the facts or data considered by the witness in forming them"). Dr. Marx states that he formed his opinion based on Schenk's medical records but gives no indication of the content of the records reviewed. The records identified in the attachment to the Report are labeled only "Medical Records" and it is not possible to infer the type or quantity of medical records reviewed.

Dr. Marx's general assertion that he used a differential analysis is itself a bare conclusion. His letter merely identifies possible causes of osteonecrosis of the jaw and fails to show why each alternative diagnosis is unlikely. Dr. Marx provides no details regarding Mr. Schenk's specific jaw condition and no explanation as to how he determined Mr. Schenk suffers from osteonecrosis related to a significant accumulation of bisphosphonates and not osteonecrosis caused by osteogenesis imperfecta. His reports offer nothing more than unsupported conclusions.

Plaintiffs attempt to justify Dr. Marx's noncompliance with Rule 26 by suggesting Novartis could gather the necessary supporting information from its depositions of Dr. Marx. But the prior depositions of Dr. Marx dealt with Dr. Marx's case-wide opinions and opinions as to other plaintiffs, none of whom had Mr. Schenk's genetic bone disease. Those depositions do not provide foundation for Dr. Marx's specific causation opinion outlined in his report about Mr. Schenk. Its noncompliance with Rule 26(a)(2)(B) is neither harmless nor justifiable. Accordingly, both Dr. Marx's First (Doc. 39, Exh. 2) and Second (Doc. 75, Exh. 3) Case-Specific Expert Reports will be stricken. It follows

- 7 -

1  that Dr. Marx's specific causation opinions will be excluded from the remainder of this
2  action.  *See* Fed. R. Civ. P. 37(c).
3      IT IS THEREFORE ORDERED that Novartis Pharmaceuticals Corporation's First
4  Motion to Strike Expert Report of Robert Marx, D.D.S. (Doc. 39) is granted.
5      IT IS FURTHER ORDERED that Novartis' Motion to Exclude Dr. Robert Marx's
6  Specific Causation Opinions (Doc. 60) is granted.
7      IT IS FURTHER ORDERED that Novartis Pharmaceuticals Corporation's Second
8  Motion to Strike Expert Report of Robert Marx, D.D.S (Doc. 75) is stricken.
9      Dated this 23rd day of July, 2014.

_____
Neil V. Wake
United States District Judge